UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICKY FERNANDEZ DUARTE,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03950-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Ricky Fernandez Duarte's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons stated below, the Court grants in part and denies in part the petition.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela. Dkt. No. 5 at 2. On October 31, 2021, a Customs and Border Protection officer encountered him near San Luis, Arizona. *Id.* The officer determined that Petitioner "had entered the United States illegally and detained him." *Id.* On November 9, 2021, Petitioner was released on an Order of Release on Recognizance ("OREC"). *Id.* On December 8, 2021, U.S. Immigration and Custom Enforcement ("ICE") Enforcement and

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

Removal Operations ("ERO") served Petitioner a Notice to Appear ("NTA"), charging him as inadmissible under Immigration and Nationality Act ("INA") Section 212(a)(6)(A)(i). *Id.* Nearly three years later, on October 15, 2024, an immigration judge ("IJ") granted the Department of Homeland Security's motion to dismiss Petitioner's removal proceedings. *Id.*

On October 3, 2026, ERO conducted a vehicle stop and detained Petitioner in Kent, Washington. *Id.* ERO served Petitioner with a second NTA, again charging him as inadmissible under INA Section 212(a)(6)(A)(i). *Id.* ERO transferred him to the Northwest ICE Processing Center ("NWIPC"), where he remains detained. *Id.* Petitioner is scheduled to appear at a "master hearing" before an IJ in Tacoma, Washington on November 9, 2026. *Id.* Petitioner has not requested or received a bond hearing from an IJ. *Id.*

On October 15, 2026, Petitioner filed a petition for a writ of habeas corpus. Dkt. No. 1. Respondents[2] filed a return[3] and Petitioner filed a traverse. Dkt. Nos. 4, 7.

## II. DISCUSSION

Petitioner claims that his continued detention violates his right to due process because Respondents deprived him of his liberty "without affording him any written notice or meaningful opportunity to be heard by a neutral and detached decision-maker before his re-detention." Dkt. No. 1 at 7. He requests immediate release under the same conditions that existed prior to his detention, the return of his personal property, an injunction preventing Respondents from re-

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[3] With their return, Respondents submitted a declaration of Deportation Officer Andre Ouk, Dkt. No. 5, which is sworn under penalty of perjury as required by 28 U.S.C. § 1746, and a declaration of Special Assistant U.S. Attorney Peter H. Clark, Dkt. No. 6, which is not. The Court accordingly does not consider Clark's declaration or the exhibits attached thereto.

detaining him "without at least seven days' advance written notice and a pre-deprivation hearing before a neutral and detached decisionmaker, unless he becomes subject to mandatory detention," and attorney's fees. *Id.* at 8. Respondents contend that petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(a), which provides for substantial procedural protections, including a bond hearing, but that Petitioner has not requested a bond hearing. Dkt. No. 4 at 5. They also argue that his re-detention comported with due process. *Id.* at 6–7. Finally, they contend that injunctive relief is unwarranted. *Id.* at 8.

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const.

amend. V. “The Fifth Amendment guarantees due process in deportation proceedings.” *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). “[T]he Due Process Clause applies to all ‘persons’ within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.” *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that “detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process”).

**B. Due Process**

The parties do not dispute that Petitioner is detained pursuant to 8 U.S.C. § 1226(a). Dkt. No. 4 at 3; Dkt. No. 7 at 3. The applicable statute matters because the constitutional process required is not necessarily the same for “different statutory provision[s] with [their] own procedural safeguards in place.” *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

1. <u>Process Required by the Statute and Implementing Regulations</u>

Section 1226 authorizes the government to detain a noncitizen “pending a decision on whether the [noncitizen] is to be removed from the United States.” 8 U.S.C. § 1226(a); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (“Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal.”). As the Supreme Court instructed in *Jennings*, “[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]” pending a removal decision, and “‘may release’ a[] [noncitizen] detained under § 1226(a) ‘on bond . . . or conditional parole.’” 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a

showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2. <u>Due Process Requirements</u>

As discussed above, Petitioner claims that his re-detention violated his right to due process because he was deprived of his liberty without any written notice or meaningful opportunity to be heard by a neutral decisionmaker prior to re-detention. Dkt. No. 1 at 7. Respondents contend that, under 8 U.S.C. § 1226(a), "Petitioner has had the right to seek the very relief he seeks here, a bond determination hearing which could lead to his release," but that he has not availed himself of that relief. Dkt. No. 4 at 3, 5. They also argue that his re-detention comported with due process because advance notice is not required where the government "must act promptly based on materially changed circumstances," though they do not specify what those changed circumstances were. *Id.* at 6. They contend that any "residual risk of error" of erroneous deprivation of Petitioner's liberty is "adequately mitigated by the availability of post-deprivation process." *Id.*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In

analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

a. *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Petitioner has been living in the United States since 2021. Dkt. No. 1 at 4. Since arriving here and being released on an OREC, he has obtained work as a paramedic and married a U.S. citizen. Dkt. No. 1 at 5, 7. He has no criminal record and complied with the terms of his OREC

prior to the dismissal of his removal proceedings in 2024. Dkt. No. 7 at 4. Although Respondents contend that the dismissal of his removal proceedings "terminated" his original OREC, Dkt. No. 4 at 2, as detailed below, the record indicates that the government treated the OREC as still in effect. Accordingly, the government should have provided Petitioner with the above-described procedural protections in connection with revocation of his liberty. Indeed, Respondents do not dispute that "Petitioner has a liberty interest in his freedom." Dkt. No. 4 at 6.

b. *Procedural Protections*

To determine what procedures are constitutionally sufficient to protect a petitioner's liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Petitioner has an interest in remaining out of immigration detention. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Despite his liberty interest being "indeterminate," that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Petitioner has an interest in the government adhering to its own procedures regarding arrests and bond hearings. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). This factor favors Petitioner.

Turning to the second factor, although Respondents argue that "advance process" was not required because the government needed to act promptly here "based on materially changed circumstances," Dkt. No. 4 at 6, they do not identify what those circumstances were, and the record does not indicate any recently changed circumstances. Petitioner's previous removal proceedings were dismissed in October 2024. *See* Dkt. Nos. 6-2, 7-2. In late 2024, after the dismissal, he applied for and was granted Temporary Protected Status, Dkt. No. 7-3, and his wife filed a Petition for Alien Relative on his behalf, Dkt. No. 7-4. In addition, "changed circumstances" is the criteria for revocation of an OREC, and the record of Petitioner's arrest indicates that his OREC was "cancel[led]" on October 3, 2026 (the day of his arrest), contradicting Respondents' assertion that it was terminated upon the 2024 dismissal of his removal proceedings. Dkt. No. 6-3 at 4 (stating that "[c]ancelation of Form I-220A was completed"). Indeed, ICE Official "J. Alvarez" completed and signed the cancellation section of Petitioner's OREC on October 3, 2026, which states: "I hereby cancel this order of release because . . . [t]he [noncitizen] failed to comply with the conditions of release." Dkt. No. 6-1.[4] It is not apparent, and Respondents do not contend, that "J. Alvarez" is one of the designated officials who may revoke release on an OREC. *See* 8 C.F.R. § 236.1(c)(9). Nor is there any evidence in the record that Petitioner in fact had violated any OREC condition. The risk of erroneous deprivation of liberty is high where the government fails to abide by its own regulations, thus depriving the noncitizen of process due (and particularly when the government argues that no process was due based on a misstatement of the record). *See Lopez v.*

---

[4] The Court further notes that even if it were to consider the evidence attached to the unsworn declaration, it would reveal further confusion on the part of the government as to whether Petitioner was in ongoing removal proceedings (during which he would likely have been subject to an OREC), and—more disturbingly—reason to doubt that probable cause existed to support Petitioner's arrest. Specifically, the warrant for Petitioner's arrest indicates that an Immigration Officer determined that "there is probable cause" to believe that Petitioner is removable from the United States, based upon both (1) "the execution of a charging document to initiate removal proceedings against the subject;" and (2) "the pendency of ongoing removal proceedings against the subject[.]" Dkt. No. 6-4 at 2. It cannot be true that the Immigration Officer found probable cause based upon both *new* removal proceedings and *ongoing* removal proceedings.

*Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations"). This factor thus weighs in favor of Petitioner.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that enforcing immigration laws, including "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, those interests are not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations and bond hearings. Therefore, the Court finds that this factor too weighs in favor of Petitioner.

Under *Mathews*, the Court finds that the United States failed to provide Petitioner with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful. *See Truong v. Noem*, No. 25-CV-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.").

**C. Injunctive Relief**

As described, Petitioner requests an injunction preventing Respondents from re-detaining him "without at least seven days' advance written notice and a pre-deprivation hearing before a neutral and detached decisionmaker, unless he becomes subject to mandatory detention." Dkt. No. 1 at 8. Respondents claim that Petitioner's request is "speculative" because he "has not alleged

any basis on which his hypothetical future re-detention would be unlawful and has not been previously subject to re-detention." Dkt. No. 4 at 8. But Petitioner states in his petition that the timing of his detention coincided with DHS's X post that the "surge" had begun and "[n]o one is off the table," and with a statement by ICE leadership following the midterm elections that "ICE will continue doing their job . . . especially in sanctuary cities where we'll surge resources and flood the zone." Dkt. No. 1 at 5–6. And in his traverse, he points to recent reporting indicating that ICE has been "arresting immigrants soon after—sometimes immediately after—release on habeas." Dkt. No. 7 at 8 (citing *ICE Rapidly Re-Arresting Immigrants Released After Winning Court Petitions*, The Guardian (November 2, 2026), https://www.theguardian.com/us-news/2026/nov/02/immigrantsreleased-after-court-petitions-ice-arrest); *"We've Been Doing This Since May": ICE Admits Instant Re-Arrest Strateg*y, MPR News (October 13, 2026), https://www.mprnews.org/story/2026/10/13/ice-admits-instant-rearrest-strategy).

Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

The Court finds that injunctive relief is appropriate here. Recent government submissions in litigation in Colorado substantiates Petitioner's concerns regarding a widespread ICE policy of re-detention. There, the government submitted a status report listing a substantial number of cases

in which the federal court released habeas petitioners and ICE immediately re-detained them. *Quintero Alvarez v. Baltazar*, No. 1:26-cv-04891-CNS, Dkt. Nos. 14–15 (D. Colo. Nov. 5, 2026). This practice has been so persistent that the Tenth Circuit recently described it as a "demonstrated pattern of re-detaining . . . noncitizens who have been granted habeas relief[.]" *Abedi v. Carter*, No. 25-3179, 2026 WL 3149141, at *9 (10th Cir. Oct. 21, 2026).

Therefore, there is a specific risk that Respondents will again re-detain Petitioner without adequate procedural protections. "[U]nlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Furthermore, the Court finds that both the balance of equities and the public interest favor the entry of a permanent injunction. These two factors merge when the federal government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022). The government's interests in enforcing immigration laws and protecting the public are in fact served by ensuring adequate procedural protections with respect to deprivation of noncitizens' liberty. And it "is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020).

Although the Court finds injunctive relief to be appropriate, the scope of Petitioner's requested injunction is overbroad. The Court will accordingly order tailored injunctive relief requiring that Petitioner be afforded with a pre-detention bond hearing comporting with Section 1226(a) for so long as he is subject to that statute. *Galvez*, 52 F.4th at 834 ("Although the 'district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction,' the injunction 'must be tailored to remedy the specific harm alleged.'" (quoting *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)).

## III. CONCLUSION

For the foregoing reasons, Fernandez Duarte's petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED in part and DENIED in part, and the Court ORDERS as follows:

1. Respondents shall release Petitioner from custody within 24 hours on the terms of his most recent OREC or other terms consistent with Section 1226(a) and shall return to Petitioner any personal property not required to be retained by Respondents by law;

2. Absent extenuating circumstances, and so long as Petitioner continues to be subject to Section 1226(a), Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them shall not re-detain Petitioner without a pre-detention hearing as required under Section 1226(a) and its implementing regulations;

3. The parties shall file a Joint Status Report by November 16, 2026, confirming that Petitioner has been released;

4. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr.* Ctr., No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Vacchio v. Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005) (same); *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) (granting fee award to immigration detainee who prevailed on habeas petition); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a

nonresident [noncitizen]" in the immigration context); *but see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (holding that EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions); *Obando-Segura v. Garland*, 999 F.3d 190, 197 (4th Cir. 2021) (same). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 13th day of November, 2026.

Lauren King
United States District Judge